IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. CR-09-094-N-EJL |
| Plaintiff, ) | |
| ) | **MEMORANDUM ORDER** |
| v. ) | |
| ) | |
| JAMES HERNANDEZ, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Defendant James Hernandez ("Hernandez") moves to suppress the evidence discovered in the search of his truck after his wife Christy Boen ("Boen") was arrested on an outstanding warrant. The Government maintains the search was valid arguing although the Supreme Court has modified the law on searches incident to arrest, the search in this case was valid as an inventory search since the vehicle was being towed. The Government also argues Hernandez lacks standing to challenge the search of the vehicle. The Court held an evidentiary hearing on this motion on February 19, 2010 and ordered the parties to file supplemental briefing. The Court is now prepared to rule on the motion to suppress.

**Memorandum Order - 1**

Factual Background

On March 14, 2009, in Smelterville, Idaho, Shoshone County Sheriff's office dispatched an officer to Walmart to investigate a stolen purse. Deputy Jones responded and while investigating was told by an employee there was a suspicious person who had been standing outside the store for some time. Deputy Jones made contact with Hernandez and asked him what he was doing. Hernandez indicated he was waiting for his wife to return with their truck which earlier had not been working, but his wife must have been able to get the truck running. Deputy Jones requested Hernandez' name and Hernandez provided his name. Deputy Jones determined that Hernandez had a non-extraditable, non-arrestable warrant from California and also had a suspended license. Deputy Jones then asked the name of Hernandez' wife and a description of the truck in order to help Hernandez locate his wife. Hernandez provided the requested information and the officer determined that Boan had an extradictable warrant from Seattle, WA.

Deputy Richter then arrived on the scene and was advised of the situation by Deputy Jones. Deputy Richter reported he had noticed a truck off the side of the road matching the description by Hernandez on his way to Walmart. Deputy Richter left Walmart to check the truck. He ran the license plate number and discovered the truck was registered to Hernandez. Deputy Richter approached the truck and determined there appeared to be a woman asleep in the vehicle. He then requested Deputy Jones to come as back up. The officers asked the sleeping person to step out of the car and after she identified herself a Boan, she was arrested

**Memorandum Order - 2**

her on the outstanding warrant. She was placed in the back of the patrol car. Deputy Jones then contacted disptach requesting a tow truck.

It is undisputed that the officer did not ask Boan if she had someone who could come get the vehicle before he started impounded the truck and started searching the vehicle. It is also undisputed that the officers did not ask Hernandez if he had anyone who could retrieve the vehicle instead of having it towed.

Prior to the tow truck arriving Deputy Richter began searching and taking an inventory of the contents of the truck. He first found Japanese-style decorative swords which Boan indicated were her husband's. She also confirmed Hernandez had a prior felony conviction and that he was at Walmart. Deputy Jones then found a ziplock bag behind the passenger's seat on the floor with credit cards in different people's names. Deputy Jones showed Deputy Richter what he had found. Deputy Richter then left the vehicle to go back to Walmart to pick up Hernandez.

Deputy Richter found Hernandez outside Walmart and asked him if there was anything illegal in the truck. Hernandez said no. Deputy Richter told Hernandez about the credit cards that were discovered and Hernandez indicated he did not know about the cards. Deputy Richter placed handcuffs on Hernandez, informed him he was in custody for the credit cards and transported him back to the location of the truck on Airport Road.

Deputy Jones continued to search the vehicle when Deputy Richter left for Walmart and he discovered a firearm in a black bag with red lettering on it. Deputy Jones showed Deputy Richter the firearm when he returned. Deputy Richter questioned Hernandez about

**Memorandum Order - 3**

the bag and the firearm and he denied knowledge about either item. Hernandez was placed under arrest and given his Miranda rights.

The truck was towed and a further inventory of the items in the truck were inventoried by the officers and many items were removed from the truck including items thought to contain residual amounts of drugs based on initial field tests.. It was determined the truck doors did not lock, so the truck was parked between two other vehicles to prevent access to the contents of the truck while it was impounded.

Defendant argues that the search was not properly incident to arrest based on the recent Supreme Court case of <u>Arizona v. Gant</u> ___ U.S. ___, 129 S.Ct. 1710 (2009) and that the inevitable discovery exception does not apply as the officers did not ask Boan or Hernandez about having someone else come and retrieve the truck before it was towed. Moreover, Hernandez maintains there was not a public safety concern to justify the impoundment and towing of the truck since the vehicle was not parked on the on/off ramp of the interstate and was not blocking the flow of traffic. The Government argues the Defendant does not have standing as the search was incident to the arrest of Boan, not Hernandez, the search was incident to the arrest, and in the alternative, the inventory search was proper based on the impoundment of the vehicle in accordance with state law.

Analysis

1. Does Hernandez have standing to contest the search of the truck?

"The term 'standing' is often used to describe an inquiry into who may assert a

**Memorandum Order - 4**

particular Fourth Amendment claim." United States v. Taketa, 923 F.2d 665, 669 (9th Cir. 19991).  Standing involves two inquiries: 1) whether the proponent of a particular legal right has alleged injury in fact; and 2) whether the proponent is asserting his own legal rights and interests rather that basing his claim for relief upon the rights of third parties.  Rakas v. Illinois, 439 U.S. 128, 139 (1978).

The government argues Hernandez does not have standing to attack the search of the vehicle as even though Hernandez was the registered owner of the vehicle at the time of the search, he was not present at the scene when Boan was arrested so he was not available to retrieve the truck and based on the known fact Hernandez had a suspended license, the vehicle could not have been turned over to him if he had been present when Boan was arrested.  The government appears to be arguing while Hernandez has alleged injury in fact in the form of the evidence used against him for the felon in possession of a firearm charge, the Defendant is nonetheless asserting the interest of Boan when she was arrested.  The Court agrees that Hernandez does not have standing to challenge the inventory search of the vehicle.

As discussed below, the Court finds the search of the vehicle incident to Boan's arrest does not survive Gant.  Therefore, the question becomes, did the officers have a duty to ask Boan if she had someone who could come get the vehicle before they called the tow truck which would necessarily require an inventory search of the vehicle.  Again, by the time Hernandez arrived on the scene he was under arrest for the credit cards that had been discovered and the firearm had been discovered by the police.  Hernandez denied ownership

**Memorandum Order - 5**

of both the credit cards and the firearm, so he would not have standing to suppress after denying ownership which constitutes abandonment. United States v. Veatch, 674 F.2d 1217, 1220-21 (9th Cir. 1982). Having abandoned any interest in the credit cards or firearm, Hernandez cannot now object to the discovery of such evidence.     Next Hernandez argues that he had an expectation of privacy over his vehicle so he has standing to object since the officers knew he was the registered owner of the vehicle and that he was nearby at Walmart. Hernandez does not cite any law that would require the officers to contact Hernandez when they arrested Boan on the extradictable warrant.

Hernandez claims it would be illogical for the Court not to find standing when the government has charged him with possession of a firearm based on the firearm found in the vehicle. While it does seem somewhat illogical, the Court cannot create standing where none exists. The facts in this particular case establish the officers knew where the owner of the truck was located, but that does not mean they had a legal obligation to check with the owner before searching the vehicle after arresting the person in control of the truck and the registered owner was not present when the person in control of the truck was arrested. Had Hernandez been present at the time of Boan's arrest he clearly would have had standing as the owner of the vehicle, but such are the not facts before this Court.     For the above reasons, the Court finds Hernandez does not have standing to bring the current motion, but in the alternative, the Court will analyze the merits of the motion to suppress in case the standing issue is reversed on appeal.

**Memorandum Order - 6**

2. Was the search of the truck a lawful search incident to arrest?

The Court agrees with the Defendant that the search was not lawful as a search incident to arrest. Based on the Supreme Court decision in Gant, officers are only permitted to search the passenger compartment of an arrestee's automobile if the search is required for officer safety or is necessary to prevent destruction of evidence of the crime for which the recent occupant was arrest. Gant at 1719. In this particular case, Boan was out of the car when she was arrested so there was not an officer safety issue and there is no likelihood of evidence related to the extradictable warrant for failure to appear to be in the vehicle. Accordingly, the search appears to have been an unreasonable warrantless search in violation of Boan's Fourth Amendment rights.

3. Is there a good faith exception to the search that was conducted incident to arrest?

It is undisputed in this case that at the time of Boan's and the Defendant's arrest, officers were permitted to search vehicles as a contemporaneous incident to the arrest of their occupants (as the Gant decision had not been issued by the Supreme Court until April 21, 2009). United States v. Weaver, 433 F.3d 1104, 1106 (9th Cir. 2006). The argument regarding the good faith exception is that if new law construing the Fourth Amendment is established by the Supreme Court then that new law is to be retroactively applied to all criminal cases not yet final before the new law came out from the Supreme Court. United States v. Johnson, 457 U.S. 537, 542-43 (1982). While courts have gone both ways

**Memorandum Order - 7**

determining whether on not the good faith exception can be raised,[1] the Ninth Circuit appears to have decided that the retroactivity application of new law outweighs the exclusionary rule and the good faith exception cannot be raised to counter the effects of Gant. See United States v. Gonzalez, 578 F3d 1130 (9th Cir. 2009). Therefore, although the officers told Boan they were going to search the vehicle incident to arrest, this cannot be a proper basis for the search when Gant is applied retroactively. Therefore, the Court must determine if any other exception to the Fourth Amendment's warrant requirement applies to this case. Gant at 1723-24.

4. Was the search of the truck lawful as part of an inventory search of the vehicle prior to impoundment by the towing company and any evidence discovered subject to the inevitable discovery exception?

The Ninth Circuit has recently ruled that whether or not evidence would be inevitably discovered must be determined on a case by case basis. United States v. Ruckes, 586 F.3d 713, 719 (9th Cir. 2009). The facts of this case are similar to those in Ruckes. While the

---

[1] Some courts have concluded that the good-faith exception applies to searches conducted in objectively reasonable reliance on pre-Gant precedent. Compare United States v. McCane, 573 F.3d 1037, 2009 WL 2231658 (10th Cir.2009) (applying good-faith exception); United States v. Wesley, 2009 WL 2487970 (D.Kan.2009) (same); United States v. Allison, 2009 WL 2218693 (S.D.Iowa 2009) (same); United States v. Grote, 2009 WL 2068023 (E.D.Wash.2009) (same), with United States v. Contreras, 2009 WL 3241915 (9th Cir.2009) (refusing to apply exception); United States v. Buford, 623 F.Supp.2d 923 (M.D.Tenn.2009) (same).

**Memorandum Order - 8**

court in <u>Ruckes</u> invalidated the search incident to arrest, the court found the evidence would have been inevitably discovered as a result of the valid inventory search as the vehicle had to be impounded once the driver was arrested and he indicated he had no other person who could retrieve the vehicle.

In the present case, when Boan was arrested, there was no passenger who could have removed the vehicle from the side of the roadway and the officer knew the owner of the truck did not have a valid license to drive. Therefore, the officer made the decision under Idaho law to have the vehicle impounded.

Defendant's counsel wants to focus on the fact that the officer did not ask Boan if she had someone else who could remove the vehicle before impounding it like the officer did in Ruckes. However, Idaho law does not require a law enforcement officer to give a person being arrested that option. The officer can immediately impound the vehicle if the person is being arrested and no other person is present who is capable of driving the vehicle.

Idaho Code § 49-662 provides in part

> (1) whenever any peace officer finds a vehicle in violation of any of the provisions of section 49-659, Idaho Code, the officer is authorized to move the vehicle, or require the driver or other person in charge of the vehicle to move it to a position off the roadway.
>
> (2) any peace officer is authorized to remove or cause to be removed to a place of safety any unattended vehicle illegally left standing upon any highway in a position or under circumstances as to obstruct the normal movement of traffic.

**Memorandum Order - 9**

>(3) Any peace officer is authorized to remove or cause to be removed to the nearest garage or other place of safety any vehicle found upon a highway when:
>
>>(a) A report has been made that the vehcile has been stolen or taken without the consent of its owner; or
>>
>>(b)The person or person in charge of the vehicle are unable to provide for its custody or removal; or
>>
>>(c) The person driving or in control of the vehicle is arrested for an alleged offense for which the officer is required by law to take the person arrested before a proper magistrate without unnecessary delay.

In this case the facts support a finding that the officers impounded the vehicle for numerous reasons: to remove obstruction to traffic and because the driver and only occupant had been arrested. Arguably, the Court does not know if Boan was able to provide for the removal of the vehicle once she was arrested as the officers did not ask her, but there is no requirement in the state statute that the officer ask, so the other subsections make the impoundment lawful.

Defendant next argues that the officer did not comply with the Shoshone County Tow Procedures (Government's Exhibit 1). This argument is misplaced. The policy states when a tow truck is needed or requested, the responding deputy "if possible" should ask the person if they have a preference on a tow truck company. In this case the officer knew that Boan was not from the area and had been arrested so he was not "required" to ask her preference

**Memorandum Order - 10**

on which tow company to use or whether she had some third party who could come retrieve the vehicle from the side of the road. The Shoshone County Tow Procedures also provides "If the person is being arrested and or is not present, then the deputy shall complete the Vehicle Impound Inventory Form, authorizing the tow of the vehicle, . . . ." In this case, Boan was arrested, so the Deputy immediately requested the tow after he placed Boan under arrest and mandated by the policy to conduct an inventory search of the vehicle.

Having found the impoundment lawful, the inventory search was necessary to protect the property of the Boan (and Hernandez) and to protect the law enforcement officers from being held liable for any missing or damaged property. State v . Weaver, 900 P.2d 196, 198 (Idaho 1995). A lawfully impounded vehicle may be searched for the purposes of determining its condition and the contents at the time of impounding. South Dakota v. Opperman, 428 U.S. 364, 376 (1976). Moreover, any property or contraband discovered during an inventory search is admissible against the defendant. Id. Therefore, the finding of any contraband in the vehicle while the vehicle was being inventoried was lawful and not a violation of the Fourth Amendment since the credit cards and firearm would have inevitably been discovered due to the impoundment of the vehicle. In making this ruling, the Court acknowledges another purpose of the search by the officers was admitted to being incident to arrest and to find Boan's identification she thought was in her purse. However, because there was another valid exception to the Fourth Amendment to allow a warrantless search, the Court need not exclude the discovery of the credit cards and firearm discovered

**Memorandum Order - 11**

both incident to arrest and which would have been inevitably discovered as part of the inventory search of the property in the truck.

Defendant wants the Court to focus on the fact the officers knew Hernandez was the registered owner and where he was located and failed to call him before impounding the vehicle. While it would not have been improper for the officer's to have proceeded in that manner, the applicable statutes and tow procedures did not require the officers to contact Henandez before impounding the vehicle and the knowledge of the officers that Hernandez' license was suspended made it less likely the officers would have thought to contact Hernandez since they knew he could not drive the vehicle. The fact that Hernandez later asked about being able to call someone to get the truck is inconsequential to the Fourth Amendment analysis. At the time Hernandez asked the question, the tow truck had already been called by the officer and the inventory search had begun, it was the arrest of Boan, not Hernandez, that gave the authority to the officers to impound the truck and conduct an inventory search of all property in the vehicle.

## Conclusion

The Court finds that Hernandez does not have standing to challenge the inventory search of the vehicle that started immediately after Boan was arrested. The Court futher finds under the totality of the circumstances presented the credit cards and firearm were lawfully discovered under the inventory search exception to the Fourth Amendment when the officer impounded the vehicle.

**Memorandum Order - 12**

Order

Being fully advised in the premises, the Court hereby orders that Defendant Hernandez's motion to suppress (Docket No. 59) is DENIED.

DATED: **May 3, 2010**

~~Honora~~ble Edward J. Lodge
U. S. District Judge

**Memorandum Order - 13**